IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.

Criminal No.: ELH-11-483

GREGORY GRAHAM,

Defendant.

**MEMORANDUM OPINION**

Defendant Gregory Graham, who is self-represented, entered a plea of guilty in April 2012 to one count of conspiracy to commit Hobbs Act robbery, and one count of possession of a firearm in furtherance of a crime of violence.  ECF 82.  In July 2012, the Court sentenced Graham to 168 months of imprisonment.  ECF 103 (Judgment).  Graham is currently serving his sentence at USP Beaumont.  *See* ECF 173-2.

Graham has moved for compassionate release.  ECF 161.  He has also filed a supplement to his request.  ECF 171.  And, he has submitted requests for relief based on the "SAFE Justice Act of 2021."  ECF 165; ECF 166; *see also* ECF 171.  I shall refer to ECF 161, ECF 165, ECF 166, and ECF 171 collectively as the "Motion."  The Office of the Federal Public Defender ("FPD") has declined to supplement the Motion.  ECF 164.

The government opposes the Motion (ECF 173, the "Opposition"), supported by several exhibits.  ECF 173-1 to ECF 173-3.  Graham has not replied, and the time to do so has passed.

No hearing is necessary to resolve the Motion.  For the reasons that follow, I shall deny the Motion.

## I.  Background

Graham and a codefendant, Lamonte Rice, were indicted on September 7, 2011.  ECF 1. They were charged with one count of conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Count One); three counts of Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Count Two, Count Four, and Count Six); and two counts of possessing and brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c) (Count Three and Count Five).  *Id*.  A Superseding Indictment was filed on March 7, 2012 (ECF 56), which added detail as to Count One.

In connection with the conspiracy charge, Count One included as "Overt Acts" several robberies committed by the defendants.  These occurred on October 29, 2010; November 8, 2010; November 18, 2010; November 28, 2010; and December 6, 2010.  *Id*. ¶¶ 7(a)-7(e).  Count Two charged defendants with the robbery of a Royal Farms Store in Essex, Maryland on October 29, 2010.  *Id*. at 6.  Count Three, under 18 U.S.C. § 924(c), was predicated on the Hobbs Act conspiracy (Count One) as well as the robbery charge contained in Count Two.  *Id*. at 7.  As noted, Count Two concerned the robbery of a Royal Farms store in Essex on October 29, 2010.  Count Four charged armed Hobbs Act robbery of the same Royal Farms store on November 18, 2010. *Id*. at 8.  In Count Five, defendants were charged under 18 U.S.C. § 924(c) in relation to Counts One and Four.  *Id*. at 9.  Count Six charged the robbery of another Royal Farms store in Essex on December 6, 2010.  *Id*. at 10.

Pursuant to a Plea Agreement (ECF 86), Graham entered a plea of guilty on April 4, 2012, to Count One and Count Three of the Superseding Indictment.  ECF 82.  The Plea Agreement included a stipulated Statement of Facts, which established that Graham committed the crimes

charged in Counts One and Three of the Superseding Indictment, "as well as the substantive crimes charged in Counts Two, Four, and Six of the Superseding Indictment."  ECF 86 at 5.

According to the Statement of Facts in the Plea Agreement, from October 2010 through December 2010, Graham, Rice, and others conspired to commit armed robberies of businesses engaged in interstate commerce.  ECF 56 at 2; ECF 86 at 4.  Some coconspirators were present at the robberies, and others participated by providing "surveillance assistance and instructions on how to complete the robberies" via text messages and phone calls.  ECF 86 at 4.

On or about October 29, 2010, Graham and his coconspirators agreed to rob a Royal Farms convenience store located on Middleborough Road in Essex, Maryland.  *Id.*  During the robbery, Graham and a second suspect, both wearing dark clothing and masks, entered the store and ordered the clerk to open the cash register.  *Id.*  Graham and the other suspect took money from the register, approximately five packs of cigarettes, and then fled.  *Id.*  Graham brandished a firearm during this robbery.  *Id.*

The next robbery occurred on November 18, 2010, at the same Royal Farms store in Essex. *Id.*  Two suspects entered the store, and one of the suspects came behind the counter, pointed a handgun at the clerk's head, and pushed the clerk to the other end of the counter.  *Id.*  This suspect ordered the clerk to open the safe, which the clerk told the suspect she could not do.  *Id.*  The suspect then instructed the clerk to open the cash register and give him all the money; the clerk complied.  *Id.*  The second suspect, carrying a plastic bag, went behind the counter and opened the case containing cigarettes.  *Id.*  Both suspects then fled.  *Id.*  "During the course of and in furtherance of the conspiracy, the Defendant provided the firearm that was used in the robbery." *Id.*

The Statement of Facts also describes a robbery of a Royal Farms store on South Marlyn Avenue in Essex on December 6, 2010. *Id.* at 5. Two suspects entered the store. *Id.* Once inside, one suspect pointed "a white plastic bag with what appeared to be a long gun inside" at the clerk. *Id.* The suspect forced the clerk behind the counter and ordered him to open the safe. *Id.* "Later investigation revealed that the purported long gun was actually a vacuum cleaner tube." *Id.* The clerk entered his combination into the safe, but was unable to open it. *Id.*

One suspect took the clerk to the back with the rest of the employees, and ordered a second clerk to the front register area. *Id.* This second clerk opened the cash registers, but was unable to open the safe because the first clerk had already entered a combination. *Id.* The suspect took the money from the cash registers and tried to have the first clerk open the safe again, but the first clerk was still unable to do so. *Id.* "Before the robbery, the Defendant, through telephone conversations and text messages, ordered the suspects to commit the December 6, 2010 robbery and provided instructions on how to complete the robbery." *Id.*

Sentencing was held on July 26, 2012. ECF 102. At the time, Graham was 24 years old. *See* Presentence Report ("PSR"), ECF 175 at 1a.[1] The PSR reflected a combined adjusted offense level of 29 as to Count One, inclusive of related conduct. *Id.* ¶ 43. After deductions for acceptance

---

[1] An initial PSR was prepared on May 8, 2012, and the report was revised on May 31, 2012. *See* ECF 175 at 1a. The PSRs were not docketed at the time. However, I have docketed the Chambers copy of the revised report. *See* ECF 175.

In addition, certain objections to the PSR were lodged by Graham, primarily concerning criminal history calculation. *See id.* at 18-19. With one exception, these objections were not adopted by the revised PSR. At sentencing, the Court did not order further revisions to the PSR in response to these objections. *See* ECF 139 (Sentencing Tr.).

In the Motion, Graham states that he was 23 years old "when [he] stood before [the Court] and accepted responsibility for what [he] did." ECF 161 at 1. But, if the date of birth in his PSR is accurate (*see* ECF 175 at 1a), then he was 24 years old at both his arraignment and his sentencing.

4

of responsibility, the defendant had a final offense level of 26.  *Id*. ¶ 45.  For Count Three, which required a mandatory minimum sentence of seven years, consecutive, the sentencing guidelines corresponded to the statutory minimum.  *See id.* ¶ 46.

The PSR reflected that defendant had several prior criminal convictions.  *Id*. ¶¶ 49-58.  This yielded a subtotal criminal history score of eight points.  *Id*. ¶¶ 59-60.  And, two points were added because Graham was on probation at the time the instant offenses were committed.  *Id*. Thus, as calculated by the PSR, Graham had a total of ten criminal history points, yielding a criminal history category of V.  *Id*. ¶ 61.  However, the PSR noted: "The Court may want to consider a downward departure under U.S.S.G. §4A1.3(b)(1) for over representation of criminal history."  *Id*. ¶ 98.

In particular, in 2007 Graham was convicted in the District Court for Baltimore City of possession of a controlled dangerous substance that was not marijuana, and sentenced to one year unsupervised probation before judgment.  *Id*. ¶ 49.  Graham was 19 years old at the time of his arrest for this offense.  Attorney representation was unknown.  *Id*.

In 2008, Graham pled guilty in the Circuit Court for Baltimore County to possession of marijuana, and was sentenced to one day time served.  *Id*. ¶ 50.  The same year, Graham was convicted in the District Court for Baltimore City of possession of marijuana, and was sentenced to one year suspended and one year of probation.  *Id*. ¶ 52.  A violation warrant was issued in 2009 and defendant was held on bond.  In 2010, probation was revoked.  *Id*.  Graham was released from custody in 2010.  *Id*.

In 2010, Graham pled guilty in the Circuit Court for Baltimore County to possession with intent to distribute cocaine.  *Id*. ¶ 54.  He was sentenced to ten years of imprisonment, with nine years, seven months, and fourteen days suspended, and five years of probation.  *Id*.  A violation of probation warrant was issued in 2011, and defendant was held without bond.  *Id*.  In 2012, Graham

pled guilty to the violation and was sentenced to seven years of imprisonment, dating from September 6, 2011. *Id.* Then, in 2011 Graham pled guilty in the District Court for Baltimore County to driving without a license, and was sentenced to 35 days of time served. *Id.* ¶ 58.

With a final offense level of 26 and a criminal history category of V, the advisory sentencing guidelines ("Guidelines" or "U.S.S.G.") called for a period of incarceration ranging from 110 to 137 months, plus 84 months consecutive as to Count Three, the § 924(c) charge. *Id.* ¶ 70.

Defendant is 5'5" tall and, at sentencing, he weighed 148 pounds. *Id.* ¶ 83. The PSR noted that Graham had only met his father once in his life, when he was too young to remember. *Id.* ¶ 76. His mother frequently left Graham alone, and was physically abusive. *Id.*

Graham reported that he had used marijuana daily for about ten years, and ecstasy daily for about eight years, although he said he had been clean for 18 months. *Id.* ¶ 85. He claimed he was "not a big drinker," although the PSR noted that medical records from the Baltimore City Detention Center listed one of his diagnoses as alcohol dependence. *Id.* ¶ 86. Graham also reported a history of depression, anxiety, and insomnia. *Id.* ¶ 81.

As of sentencing, Graham had one child from a prior relationship. *Id.* ¶ 79. Defendant described himself as close with his fiancé's three children. *Id.* In addition, according to the PSR: "The defendant stated that he has been a member of the Piru gang (related to Bloods) for ten years and considers himself a current member." *Id.* ¶ 83.

Both sides agreed that a downward departure for overrepresentation of criminal history was warranted. *See* ECF 139 (Sentencing Tr.) at 9, 15, 21-23. I agreed that Graham's criminal history was overrepresented and that a downward departure was warranted under U.S.S.G. § 4A1.3(b)(1). *See* ECF 104 (Statement of Reasons) at 4; ECF 139 at 35-37. In particular, I noted

that Graham received two points for two marijuana possession offenses; one resulted in a one-day sentence and the other resulted in a one-year suspended sentence. ECF 104 at 4. In addition, he received one point for an offense committed when he was 19 years old, for which the sentence was one year unsupervised probation before judgment and for which it was unclear if he had legal representation. *Id*. Finally, he incurred an additional point for a traffic offense. *Id*. Therefore, I determined that Graham should be deemed to have a criminal history category of III. *Id*. As a result, the Guidelines range for Count One was reduced to 78-97 months of incarceration. *Id*. But, this did not impact the mandatory minimum sentence applicable to Count Three.

I sentenced Graham to 84 months of imprisonment for Count One and to the mandatory minimum of 84 months of imprisonment, consecutive, for Count Three, for a total of 168 months of incarceration. ECF 103 (Judgment) at 2. And, I imposed the sentence as to Count One concurrent with Graham's then-ongoing Maryland sentence for possession with intent to distribute cocaine. *Id*.; *see* ECF 175, ¶ 54. I also imposed a total term of five years of supervised release. ECF 103 at 3.

In 2016, represented by the FPD, Graham filed a motion to vacate his sentence under 28 U.S.C. § 2255. ECF 135. The motion argued that, in light of *Johnson v. United States*, 576 U.S. 591 (2015), the underlying count for Graham's § 924(c) conviction, namely Hobbs Act robbery, failed to qualify as a crime of violence. ECF 135. The motion was stayed pending the resolution of various cases in litigation before the Supreme Court and the Fourth Circuit.

The stay was ultimately lifted in 2019, following the Supreme Court's decision in *United States v. Davis*, ___ U.S. ___, 139 S. Ct. 2319 (2019). *See* ECF 153. And, in *United States v. Mathis*, 932 F.3d 242, 266 (4th Cir. 2019), the Fourth Circuit concluded that Hobbs Act robbery

constitutes a crime of violence for the purpose of an offense under 18 U.S.C. § 924(c).  In light of *Mathis*, Graham withdrew his § 2255 motion in February 2020.  ECF 158.

Aside from his § 2255 motion, Graham has maintained a steady pace of correspondence to the Court, raising various concerns as to his sentence calculation.  *See, e.g.*, ECF 141; ECF 144; ECF 146; ECF 151; ECF 156.   In some instances, his concerns appeared to reflect a misunderstanding of his sentence.  For example, he seemed to believe that because his sentence as to Count One was concurrent with his state sentence, then when his state sentence ended, his federal sentence as to Count One would be complete.  *See, e.g.*, ECF 146.  When appropriate, I have endeavored to correct Graham's confusion.  *See, e.g.*, ECF 147 (explaining that Graham would still need to serve the remaining portion of his 84-month sentence as to Count One after his state sentence ended).

As noted, Graham is currently serving his sentence at USP Beaumont.  *See* ECF 173-2. Federal Bureau of Prisons ("BOP") records indicate a projected release date of March 12, 2024. ECF 173-1 at 2, 5; *see also Inmate Locator*, BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited Mar. 11, 2022).  In addition, he will be eligible for home detention on September 12, 2023.  ECF 173-1 at 3.  Including certain jail time credit received by defendant (*see* ECF 173-1 at 4), Graham has served about 126 months of his 168-month sentence, or 75%.

In the Motion, Graham states that he has not received any disciplinary infractions for "fighting, knives, or anything of that nature" (ECF 161 at 4), or for a "violent offense."  ECF 171 at 2.  However, his disciplinary record reflects multiple infractions.

In particular, he has received seven infractions between September 2015 and May 2021. *See* ECF 173-3.  Most recently, in May 2021, Graham lost his email privileges for 90 days for refusing to obey an order, as part of which he stated that the BOP officer was "on some bullshit."

*Id*. at 2.  Previous infractions include use of drugs or alcohol; failing to stand count; possessing an unauthorized item; the introduction of drugs or alcohol, specifically attempting to introduce suboxone through the mail; disruptive conduct; and phone abuse.  *Id*. at 2-4.

Upon his release, Graham hopes to launch a "publication company" and start a "mentoring program."  ECF 161 at 3.  He also plans to spend time with his family.  *Id.* at 3-5.

## II.  Standard of Review

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson,* 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019).  But, "the rule of finality is subject to a few narrow exceptions."  *Freeman v. United States*, 564 U.S. 522, 526 (2011).  One such exception is when the modification is "expressly permitted by statute."  18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence, if "extraordinary and compelling reasons warrant such a reduction."  18 U.S.C. § 3582(c)(1)(A)(i).  This provision is an exception to the ordinary rule of finality.  *United States v. Jenkins*, 22 F.4th 162, 169 (4th Cir. 2021).

Section 3582 was enacted as part of the Sentencing Reform Act of 1984.  Originally, it permitted a court to alter a sentence only upon a motion by the Director of the BOP.  *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984).  Thus, a defendant seeking compassionate release had to rely on the BOP Director for relief.  *See*, *e.g*., *Orlansky v. FCI Miami Warden*, 754 Fed. App'x 862, 866-67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying  compassionate release motion because § 3582 "vests absolute discretion" in the BOP).

For many years, the safety valve of § 3582 languished.  The BOP rarely filed motions on an inmate's behalf.  As a result, compassionate release was exceedingly rare.  *See Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In December 2018, Congress passed the First Step Act of 2018 ("2018 FSA" or "First Step Act"), Pub. L. 115-391, 132 Stat. 5239 (2018); *see United States v. McCoy*, 981 F.3d 271, 275-76 (4th Cir. 2020).  As amended by the 2018 FSA, 18 U.S.C. § 3582(c)(1)(A) now permits a court to reduce a defendant's term of imprisonment "upon motion of the Director of [BOP], *or upon motion of the defendant after the defendant has fully exhausted all administrative rights* to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first.  (Emphasis added).  So, once a defendant has exhausted his administrative remedies, or after 30 days have passed from the date on which the warden has received the defendant's request, he or she may petition a court directly for compassionate release.  *Jenkins*, 22 F.4th at 169; *United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021); *McCoy*, 981 F.3d at 276.  That option constitutes a sea change in the law.

Under § 3582(c)(1)(A), the court may modify the defendant's sentence if, "after considering the factors set forth in section 3553(a) [of 18 U.S.C.] to the extent that they are applicable," it finds that

(i) extraordinary and compelling reasons warrant such a reduction; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the

10

safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

*See United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021) (per curiam).

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), the defendant must demonstrate that (1) "extraordinary and compelling reasons" warrant a reduction of his sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with applicable policy statements issued by the Sentencing Commission. Notably, "Section 3582(c)(1)(A)(i) does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release." *McCoy*, 981 F.3d at 276. Moreover, "the district court enjoys broad discretion in conducting a § 3582(c)(1)(A) analysis." *Jenkins*, 22 F.4th at 169.

The Fourth Circuit has said that, "[w]hen deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, 820 Fed. App'x 229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)). In U.S.S.G. § 1B1.13, titled "Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) Policy Statement," the Sentencing Commission addressed the "extraordinary and compelling reasons" that might merit compassionate release. *See McCoy,* 981 F.3d at 276-77.[2]

In particular, U.S.S.G. § 1B1.13 provides that, on motion by the Director of the BOP, the court may reduce a sentence where warranted by extraordinary or compelling reasons (§

---

[2] The Sentencing Commission acted pursuant to 28 U.S.C. § 994(t) (directing Sentencing Commission to "describe what should be extraordinary and compelling reasons for sentence reduction"), as well as 28 U.S.C. § 994(a)(2)(C). *See McCoy,* 981 F.3d at 276.

1B1.13(1)(A)); the defendant is at least 70 years old and has served at least 30 years in prison (§ 1B1.13(1)(B)); the defendant is not a danger to the safety of any other person or to the community (§ 1B1.13(2)); and the reduction is consistent with the policy statement. U.S.S.G. § 1B1.13(3).

The Application Notes to U.S.S.G. § 1B1.13 are expansive, and indicate that compassionate release may be based on circumstances involving illness, declining health, age, exceptional family circumstances, as well as "other reasons." U.S.S.G. § 1B1.13 App. Notes 1(A)-(D). Application Note 1(D), titled "**Other Reasons**," permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 App. Note 1(D). This is the "so-called, 'catch-all' category." *McCoy*, 981 F.3d at 276.

However, as the *McCoy* Court recognized, the policy statement in U.S.S.G. § 1B1.13 was issued in 2006 and was last updated in November 2018, *prior* to the enactment of the First Step Act. *McCoy*, 981 F.3d at 276. Of significance here, it is only "directed at BOP requests for sentence reductions." *Id.* (citing U.S.S.G. § 1B1.13). "By its plain terms, in short, § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)." *Id.* at 282; *see also Jenkins*, 22 F.4th at 169; *United States v. Zullo,* 976 F.3d 228, 230 (2nd Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1100-02 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). In other words, the policy statement does not apply to the court.

Indeed, "[a]s of now, there is no Sentencing Commission policy statement 'applicable' to [] defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction." *McCoy*, 981 F.3d at 283.

12

Consequently, district courts are "'empowered…to consider any extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (quoting *Zullo*, 976 F.3d at 230); *see also Jenkins*, 22 F.4th at 170. But, "rehabilitation alone cannot serve as a basis for compassionate release." *United States v. Davis*, ___ F. App'x ___, 2022 WL 127900, at * 1 (4th Cir. Jan. 13, 2022) (per curiam); *see McCoy*, 981 F.3d at 286 n.9; *United States v. Harris*, ___ F. App'x ___, 2022 WL 636627, at *1 (4th Cir. Mar. 4, 2022) (per curiam); 28 U.S.C. § 994(t). However, "successful rehabilitation efforts can be considered" in regard to the analysis of extraordinary and compelling reasons. *Harris*, 2022 WL 636627, at *1.

Nonetheless, as the movant, the defendant bears the burden of establishing that he is entitled to a sentence reduction under 18 U.S.C. § 3582. *See, e.g., United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *United States v. Edwards*, NKM-17-00003, 2020 WL 1650406, at *3 (W.D. Va. Apr. 2, 2020). And, even if the defendant establishes an extraordinary and compelling reason that renders him eligible for a sentence reduction, the court must consider the factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *See Dillon v. United States*, 560 U.S. 817, 826-27 (2010); *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021); *see also United States v. Butts*, No. 21-6380, 2021 WL 3929349, at *2 (4th Cir. Sept. 2, 2021) (per curiam) (noting that, even if the district court finds extraordinary and compelling circumstances, it must consider the § 3553(a) factors to the extent applicable in exercising its discretion); *Kibble*, 992 F.3d at 329-30 (noting that district court must consider § 3553(a) factors when considering a motion to reduce sentence under § 3582(c)(1)(A) and district court enjoys broad discretion in conducting this analysis); *United States v. Trotman*, 829 Fed. App'x 607, 608 (4th Cir. 2020) (per curiam) (recognizing that, when considering a motion to reduce sentence under § 3582(c)(1)(A), the court must consider the sentencing factors under §

3553(a), to the extent applicable); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020) (district court must give due consideration to the § 3553(a) factors); *United States v. Spriggs*, CCB-10-0364, 2021 WL 1856667, at *3 (D. Md. May 10, 2021) (court must consider the § 3553(a) factors).

The Guidelines "are not directly applicable to defendant-filed motions" under § 3582(c). *Jenkins*, 22 F.4th at 169. However, of relevance here, "the court may consider these guidelines in defining what should be considered an 'extraordinary and compelling circumstance' warranting a sentence reduction." *Id.* (citing U.S.S.G. § 1B1.13); *see High*, 997 F.3d at 187. As mentioned, the district court is "'empowered . . . to consider *any* extraordinary and compelling reason for release'" raised by a defendant. *McCoy*, 981 F.3d at 284 (citation omitted); *see Jenkins*, 22 F.4th at 169.

Nevertheless, compassionate release is a "rare" remedy. *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019); *see Chambliss*, 948 F.3d at 693-94; *United States v. Mangarella*, FDW-06-151, 2020 WL 1291835, at *2-3 (W.D. N.C. Mar. 16, 2020). And, "[a] district court need not provide an exhaustive explanation analyzing every § 3553(a) factor," nor is it "required to address each of a defendant's arguments when it considers a motion for compassionate release." *Jenkins*, 22 F.4th at 170; *see Chavez-Mena v. United States*, ___ U.S. ___, 138 S. Ct. 1959 (2018) (passim); *High*, 997 F.3d at 187. But, a district court abuses its discretion when it "act[s] arbitrarily or irrationally," "fail[s] to consider judicially recognized factors constraining its exercise of discretion," "relie[s] on erroneous factual or legal premises," or "commit[s] an error of law." *High*, 997 F.3d at 187 (internal quotation marks omitted).

14

### III.  Discussion

### A. Exhaustion

The government contests that Graham has satisfied his administrative exhaustion requirements.  As amended by the FSA, 18 U.S.C. § 3582(c)(1)(A) permits a court to reduce a defendant's term of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first.  So, once a defendant has exhausted his administrative remedies, he may petition a court directly for compassionate release.  *See, e.g.*, *Jenkins*, 22 F.4th at 169 ("Congress enacted the First Step Act to allow incarcerated individuals to directly petition district courts for compassionate release so long as they first exhaust their administrative remedies.").

In *Muhammad*, 16 F.4th 126, the Fourth Circuit made clear that, under a plain reading of the statute, a defendant need only wait until the 30 days have passed from receipt of his compassionate release request by the warden to directly petition the court.  *Id*. at 129.  "The text of § 3582(c)(1)(A) plainly provides that a defendant may file a motion on his own behalf 30 days after the warden receives his request, regardless of whether the defendant exhausted his administrative remedies."  *Id*.  Thus, the term administrative "exhaustion," although commonly used, may to some extent be a misnomer.  In any case, the statute is clear that a defendant must have, at the very least, directed a compassionate release request to the warden before filing in court.  *See McCoy*, 981 F.3d at 276 (noting that "defendants now may file motions for sentence modifications on their own behalf, *so long as they first apply to the BOP*.") (emphasis added).

The Fourth Circuit also clarified in *Muhammad*, 16 F.4th at 130, that this administrative requirement "is a non-jurisdictional claim-processing rule," rather than a jurisdictional provision. This means that it can be "waived if it is not timely raised." *Id*. at 129.  Here, however, the government has raised it.

In the Motion, Graham asserts that he has "exhausted his administrative remedies."  ECF 161 at 1.  However, he has not provided any details or supporting documentation as to this issue. But, as noted, the government disputes that Graham has exhausted his administrative requirements, and offers evidence.  *See* ECF 173 at 4.  The Opposition includes copies of communications between government counsel and BOP staff, in which counsel requested records of Graham asking the warden for compassionate release, and to which BOP staff responded that "[n]o CR request [was] found."  ECF 173-2.  In addition, the notice by FPD that it would not represent Graham states: "[T]he Federal Public Defender has not received any documents regarding Mr. Graham's exhaustion of administrative remedies."  ECF 164.

As the movant, the defendant bears the burden of establishing that he is entitled to a sentence reduction under 18 U.S.C. § 3582.  *See, e.g.*, *Hamilton*, 715 F.3d at 337; *Edwards*, 2020 WL 1650406, at *3.  Notably, although his unsupported assertion of exhaustion has been challenged by the government with specific evidence, Graham has not replied to rebut the government's allegations.  And, his time to do so has passed.

To my knowledge, although the Fourth Circuit has held that the administrative exhaustion requirement may be waived if not asserted, it has not addressed whether requirement is subject to other equitable principles, such as tolling.  *See, e.g.*, *Nutraceutical Corp. v. Lambert*, ___ U.S. ___, 139 S. Ct. 710, 714 (2019) ("Though subject to waiver and forfeiture, some claim-processing rules are 'mandatory'—that is, they are 'unalterable' if properly raised by an opposing party. . . .

16

Whether a rule precludes equitable tolling turns not on its jurisdictional character but rather on whether the text of the rule leaves room for such flexibility.") (internal quotation omitted); *United States v. Marsh*, 944 F.3d 524, 529-30 (4th Cir. 2019) (same).  However, even assuming such equitable principles could apply here, Graham has not offered any circumstances or argument supporting the application of such principles.

In view of this record, I cannot conclude that Graham has satisfied the threshold requirement that he first direct a compassionate release request to the warden before filing in Court. On this ground, the Motion must fail.

### B. Merits

Even if Graham had satisfied his administrative exhaustion requirements, however, his claim would fail on the merits.  This is because Graham has failed to establish extraordinary and compelling circumstances under the compassionate release statute.

Graham has presented a grab bag of reasons as to why he should be released early.  But, none of them justify an alteration to Graham's sentence.[3]

Fundamentally, Graham's sentencing arguments appear to be a continuation of his ongoing misunderstandings regarding the calculation of his sentence.  He complains that he "wasnt [sic] allowed <u>any</u> relief on the laws that passed about Hobbs Act conspiracy <u>not</u> being a crime of violence, or the 924(c)'s residual clause being void for vagueness because I was told that <u>my</u> 924(c) count was attached to a <u>dismissed</u> charged [sic] of Hobbs Act <u>Robbery</u>!!"  ECF 161 at 2 (emphases in original).

---

[3] I note that, surprisingly, the government insists in its Opposition that the Court's consideration of Graham's Motion is governed by the relevant policy statement of the Sentencing Commission, namely U.S.S.G. § 1B1.13.  *See* ECF 173 at 2-11.  But, as discussed above, the Fourth Circuit has squarely held otherwise.  *See McCoy*, 981 F.3d at 283-84.

The Supreme Court has held that the "residual clause" of § 924(c) is, indeed, void for vagueness. *See Davis*, 139 S. Ct. 2319 at 2336.  And, the Fourth Circuit has held that Hobbs Act *conspiracy* is not a crime of violence under § 924(c).  *See United States v. Ali*, 991 F.3d 561, 573 (4th Cir. 2021); *United States v. Simms*, 914 F.3d 229, 233-34 (4th Cir. 2019) (en banc).  But, as noted, the Fourth Circuit has also determined that Hobbs Act robbery itself remains a crime of violence under the "force clause" of § 924(c), and thus qualifies as a proper § 924(c) predicate offense.  *See Ali*, 991 F.3d at 573; *Mathis*, 932 F.3d at 263-66.  And, in this case, both Hobbs Act conspiracy and Hobbs Act robbery were the underlying predicates for Graham's § 924(c) conviction.  *See* ECF 56 at 7; ECF 86 at 2.

Graham expresses confusion as to how Hobbs Act robbery could be the predicate offense for his § 924(c) conviction, given that his standalone Hobbs Act robbery charges (Counts Two, Four, and Six) were dismissed, and he only pled guilty to Hobbs Act conspiracy (Count One).  *See* ECF 103.  He states: "Only once Hobbs Act Conspiracy was deemed not violent and the 924(c)'s residual clause was deemed void, did I find out that my count of 924(c) was attached to a Dismissed count of Hobbs Act Robbery!! . . . So, I didnt [sic] and still dont [sic] understand how my 924(c) sentence is attached to a dismissed count of Hobbs Act Robbery . . . ."  ECF 161 at 2 (emphases in original).

Defendant's confusion is understandable; federal sentencing procedures are not known for their simplicity.  But, the circumstance described by Graham—in which he was not separately convicted, on a standalone basis, of the underlying predicate offense for his § 924(c) conviction— is hardly an uncommon one.  Significantly, "a defendant's conviction under § 924(c)(1) does not depend on his being convicted—either previously or contemporaneously—of the predicate offense, as long as all of the elements of that offense are proved and found beyond a reasonable

doubt." *United States v. Crump*, 120 F.3d 462, 466 (4th Cir. 1997); accord *United States v. Crawley*, 2 F.4th 257, 264 (4th Cir. 2021); *United States v. Woods*, 271 Fed. App'x 338, 346 (4th Cir. 2008).  In other words, the validity of the § 924(c) conviction did not require a conviction for Hobbs Act robbery.[4]

Here, the Plea Agreement explicitly provided that one of the elements of the § 924(c) offense in Count Three was that Graham "possessed and brandished a firearm in furtherance of a crime of violence for which he can be prosecuted in a court of the United States, to wit: interference with interstate commerce by robbery," *i.e.*, Hobbs Act robbery.  ECF 86 at 2.  And, of significance, Count Three expressly incorporated the Hobbs Act robbery offense set forth in Count Two of the Superseding Indictment.  *See* ECF 56 at 7.

In addition, the Plea Agreement specifically recounted Hobbs Act robbery in Count Two as an underlying offense in connection with the § 924(c) charge in Count Three.  *See* ECF 86 at 2. Moreover, the Plea Agreement provided that the Statement of Facts established that Graham committed the substantive crimes charged in Counts Two, Four, and Six of the Superseding Indictment; that is, the Hobbs Act robbery charges.  *See id*. at 5.

At defendant's guilty plea hearing on April 2, 2012 (ECF 82), the Court reviewed the elements of Count One and Count Three with Graham, and noted that the underlying offense for Count Three was Hobbs Act robbery.  *See* ECF 148 (Arraignment Tr.) at 12.  In addition, the § 2255 motion filed on behalf of Graham by the FPD was premised on Hobbs Act robbery being the underlying crime of violence for Count Three.  *See* ECF 135 at 1.

---

[4] It is apparent that the lack of such a requirement generally works to the advantage of a defendant. If the law were otherwise, the government would insist on a plea to both offenses. At a minimum, this would expose a defendant to a greater sentence.

Graham's arguments do not provide a basis to find extraordinary and compelling circumstances.  He does not rely on the COVID-19 pandemic as the basis for his Motion, for example, although he refers to the pandemic.  To illustrate, he mentions that several people close to him have passed away as a result of COVID-19.  *See* ECF 161 at 4.  But, he provides no information to suggest that he has any particular health condition putting him at risk as a result of COVID-19, which could form the basis for compassionate release.  Judge Chasanow of this Court has explained: "While all share the concern of the public health challenges caused by COVID-19, and appreciate the heightened anxiety experienced by those incarcerated in correctional facilities . . ., generalized and unspecific reasons . . . do not satisfy the standard for compassionate release." *United States v. Harris*, DKC-08-319, 2020 WL 2512420, at *1 (D. Md. May 15, 2020).

Graham cites his efforts at rehabilitation.  As described, these include having "written multiple books;" plans to launch a "publication company;" an intent to start a mentoring program for troubled youth in Baltimore; obtaining his G.E.D.; certificates in welding and sociology; "studying for the chance to get [his] CDL's;"[5] and personal and spiritual growth.  ECF 161 at 3; ECF 171 at 3-4.  In addition, he notes his desire to spend time with his daughter, who at the time of the Motion was nearly twelve years old, and with whom he has had little contact, due to his incarceration.  ECF 161 at 3-4.  Further, Graham mentions his young age at the time of sentencing (*id*. at 1); his lack of violent infractions while incarcerated (*id*. at 4; ECF 171 at 2); and claims that he has accepted responsibility for his criminal conduct.  ECF 161 at 2; ECF 171 at 2.

Graham's rehabilitative work while incarcerated is laudable, as is his desire to spend time with his daughter.  The Court applauds the strides Graham has taken.  Notably, the Court must make an "individualized assessment[]," *id*. at 286, which may include such factors as rehabilitation

---

[5] Presumably, CDL refers to a commercial driver's license.

and other post-sentencing conduct, youth, the ill health of a family member, and more. *Harris*, 2022 WL 636627, at *1; *Davis*, 2022 WL 127900, at *1-2; *McCoy*, 981 F.3d at 286-87. However, "rehabilitation alone cannot serve as a basis for compassionate release." *Davis*, 2022 WL 127900, at *1.

Keeping in mind that compassionate release is properly reserved for "the most grievous cases," *McCoy*, 981 F.3d at 287, defendant's arguments do not support a finding of extraordinary and compelling circumstances. The circumstances cited by Graham must be weighed against the severity of his offenses. As noted, Graham was a participant in a series of armed robberies in which innocent victims were threatened at gunpoint.

In the Motion, Graham minimizes his offenses and involvement in the robberies, asserting that "no one was hurt" and that others "actually committed these crimes." ECF 161 at 2 (emphases in original). But, Graham wielded a handgun in at least one robbery, and he had a role in the commission of the other robberies. Although no physical injury occurred, the perpetrators sought to instill fear in the victims as a key component in the commission of the robberies, and events could have easily escalated to violence. Furthermore, the emotional trauma experienced by the victims, who faced a lethal weapon, could last a lifetime. Graham's attempts to minimize his role contrast with his assertions that he has accepted responsibility.

As noted, Graham emphasizes that he has not received any disciplinary infractions for fighting or violence. *Id*. at 4; ECF 171 at 2. Yet, his disciplinary record is troubling. Between 2015 and May 2021, defendant accrued seven infractions. *See* ECF 173-3. Most recently, he was sanctioned for refusing to obey an order and stating that the BOP officer was "on some bullshit." *Id*. at 2. Past records include an attempt to introduce suboxone into the facility via the mail, and

disruptive conduct.  *Id*. at 2-4.  The infractions suggest that Graham is not fully committed to following the rules, which is essential to becoming a law abiding member of the community.

Moreover, it is worth noting that Graham's sentence, as imposed, was considerably more lenient than that called for in the PSR.  The downward departure as to his criminal history led to a reduction in his guidelines range for Count One, from 110-137 months to 78-97 months.  *See* ECF 104 at 4.

In addition, as to his young daughter, there is no suggestion, from Graham or otherwise, that she is without a caregiver or in ill health.  Indeed, Graham's Motion mentions that his daughter is in the care of her mother.  ECF 161 at 3.  Graham's desire to see his daughter is eminently understandable.  But, it is the same situation faced—regrettably—by a great many incarcerated people, not the "grievous case[]" warranting compassionate relief.  *McCoy*, 981 F.3d at 287.

For the foregoing reasons, and after careful consideration, I conclude that Graham has not established extraordinary and compelling circumstances under the compassionate relief statute.

In two letters, which Graham refers to as amendments to the Motion, Graham seeks relief under legislation he calls the "Safe, Accountable, Fair, and Effective (SAFE) Justice Act of 2021." ECF 165 at 1; ECF 166 at 1.  According to Graham, "Section 103" of the SAFE Justice Act amended 18 U.S.C. § 924(c) to permit § 924(c) sentences to be imposed concurrently, rather than consecutively.  ECF 165 at 1-2.  Furthermore, this same section allows § 924(c) sentences imposed prior to the enactment of the SAFE Justice Act to be retroactively modified.  *Id*.

The problem with Graham's argument is that no law called the SAFE Justice Act, or containing the provision described, has ever been enacted, to my knowledge.  As the government notes (ECF 173 at 2 n.1), a bill with that title has been introduced in a previous session of Congress, although it is unclear if it contained the provision described by Graham.  *See* SAFE Justice Act,

H.R. 4261, 115th Cong. (2017).  Regardless, it was never passed.  The text of § 924(c) remains unchanged, and requires the imposition of a consecutive sentence of at least seven years, and up to life imprisonment.  *See* 18 U.S.C. § 924(c)(1)(D)(i).  Accordingly, this argument is not a basis for altering Graham's sentence.

### IV.  Conclusion

For the reasons set forth above, I shall deny the Motion, without prejudice.

An Order follows, consistent with this Memorandum Opinion.


Date: March 25, 2022                                            /s/
                                                 Ellen L. Hollander
                                                 United States District Judge